**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VINCENT J. KOERT, SR., | Civil Action No. 15-02238 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | December 8, 2015 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Vincent J. Koert, Sr.'s ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Olarsch's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision must be **AFFIRMED**.

## I.   PROCEDURAL AND FACTUAL HISTORY

### A.  Procedural History

On March 31, 2014, Plaintiff applied for DIB (Tr. 148–49), alleging disability as of January 10, 2014, associated with thyroid cancer, severe bipolar disorder and depression.  (Tr. 48–49, 173.) Plaintiff's application was denied both initially and upon reconsideration.  (Tr. 82–86, 90–92.) Plaintiff's subsequent request for a hearing before an administrative law judge was granted (Tr. 108–12), and a hearing was held before ALJ Olarsch on October 22, 2014.  (Tr. 30–49.)  Plaintiff, as well as a vocational expert, appeared and testified at the hearing.  (Tr. 20–49.)  On November 25, 2014, ALJ Olarsch issued a decision finding Plaintiff was not disabled and denying his application for disability benefits.  (Tr. 13–29.)  On February 13, 2015, the Appeals Council denied Plaintiff's request for review of ALJ Olarsch's November 25, 2014 decision, making it the Commissioner's final decision.  (Tr. 1–5.)  Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of DIB.  (Compl. 3.)

### B.  Factual History

#### 1. Personal and Employment History

Plaintiff was 58 years old at the onset of his disability in 2014.  (Pl.'s Br. 1–2.)  He completed one year of college and was previously employed as a police detective and a highway worker.  (*Id*. at 2.)  Plaintiff alleges that he became disabled due to the following medical impairments: "thyroid cancer and thyroidectomy, bipolar disorder, panic attacks, anxiety, and major depression."  (Compl. ¶ 4.)

#### 2. Medical History

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to his disability claim.  (*See* Tr. 234–393.)  In addition, Plaintiff testified about

his health during a hearing before ALJ Olarsch.  (*See* Tr. 33–45.)  The following is a summary of the medical evidence:

Plaintiff alleges that he has been unable to work due to physical and psychiatric ailments. (Tr. 173.)   Specifically, Plaintiff contends that he has symptoms related to severe bipolar depression, thyroid cancer, back pain, knee pain, and headaches.  (Tr. 173.)

Plaintiff underwent a total thyroidectomy and subsequent radioiodine 131 treatment for papillary carcinoma of his thyroid in 2005.  (Tr. 303, 317.)  According to Changaramk Sivadas, M.D. ("Dr. Sivadas"), Plaintiff received continual monitoring of his thyroid and the cancer has been in remission to date.  (Tr. 317–19.)

Regarding all his other medical complaints, Plaintiff sought treatment from family practitioner Harvey Siegel, D.O. ("Dr. Siegel") from April 22, 2005, until August 7, 2014.  (*See* Tr. 234–309, 371.)  During this time Dr. Siegel prescribed Plaintiff various medications, such as Lexapro, to help treat his symptoms.  (Tr. 234.)  On May 21, 2014, Dr. Siegel completed an Impairment Questionnaire in which he diagnosed Plaintiff with bipolar depression based on neurologic and psychiatric evaluations.  (Tr. 370.)  Dr. Siegel also opined that Plaintiff was unable to work for a period of twelve months and found that Plaintiff suffered from fatigue, anger, aggression, sleep disturbances, insomnia and racing thoughts.  (Tr. 370–72.)  Additionally, Dr. Siegel found that in an eight-hour workday, Plaintiff could sit for one hour and stand/walk for less than one hour.  (Tr. 373.)  According to Dr. Siegel, Plaintiff's symptoms would interfere with his attention and concentration frequently (from 1/3 to 2/3 of an eight hour workday), and require Plaintiff to take unscheduled rest-breaks approximately every thirty minutes.  (Tr. 374.)  Finally, Dr. Siegel stated that Plaintiff's conditions would force Plaintiff to be absent from work "[m]ore than three times a month."  (Tr. 375.)

On May 4, 2014, Dr. Sivadas conducted an internal medicine consultative evaluation of Plaintiff.  (Tr. 317.)  Dr. Sivadas assessed Plaintiff's main medical problems to be depression and bipolar disorder, for which Plaintiff was regularly receiving treatment from a psychiatrist, and was prescribed "Lexapro, Olanzapine, and Lamictal."  (Tr. 319.)  Dr. Sivadas also noted that Plaintiff was obese and that Plaintiff denied tobacco and alcohol use.  (Tr. 318.)

From May 28, 2013, through July 8, 2014, Plaintiff visited Sussex County Psychiatric Association monthly, where he received treatment from Loreto Lizardo, M.D. ("Dr. Lizardo"), a board-certified psychiatrist.  (*See* Tr. 310–16, 377.)  On July 8, 2014, Dr. Lizardo completed a Mental Impairment Questionnaire in which he diagnosed Plaintiff with bipolar disorder and depression.  (Tr. 377.)  Dr. Lizardo also opined that Plaintiff is "totally disabled from engaging in gainful employment of any form at this time."  (Tr. 381.)  Then, on October 1, 2014, Dr. Lizardo issued a Narrative Report where he provided the following prognosis:

> Prognosis is very guarded. At this point [Plaintiff] continues to be unable to engage in any form of gainful employment due to the severity of symptoms he continues to experience as well as side effects from medications. [Plaintiff] is not capable of keeping up with the pace needed in an employment situation. Due to the chronicity and extent of his illness I believe his prognosis for recovery is poor and disability could be permanent and definitely will last more than 12 months.

(Tr. 383.) Dr. Lizardo also believed Plaintiff suffered from depression, anxiety, psychomotor retardation, poor concentration and forgetfulness.  (Tr. 383.)  However, Dr. Lizardo did not conduct any laboratory tests.  (Tr. 383.)

Dr. Siegel and Dr. Lizardo referred Plaintiff to the Neurocognitive Institute "for neuropsychological evaluation for a differential dementia exam."  (Tr. 326.)  While at the Neurocognitive Institute from June 6, 2014, through July 17, 2014, clinical neuropsychologist

Gerald Tramontano, Ph.D. ("Dr. Tramontano") examined Plaintiff four times.  (*See* Tr. 326–34.)

In his report, Dr. Tramontano stated the following impressions:

> Overall cognitive functioning fell in the low average range, but some areas of cognition fell well below this level.  Most notably – encoding and learning when processing both verbally and visually presented information was moderately to severely impaired.  Executive system functions such as generating novelty, establishing and shifting sets and categorical reasoning were generally fell [sic] in the moderate impairment range.  To a lesser degree semantic fluency and naming were also impaired.

(Tr. 333.)  Dr. Tramontano also noted that Plaintiff suffered an anxious depression.  (Tr. 333.)

Kim Arrington, Psy. D. ("Dr. Arrington") conducted a psychological evaluation of Plaintiff on October 16, 2014.  (Tr. 387–93.)  She reported that Plaintiff's manner of relating, social skills, and overall presentation were adequate.  (Tr. 388.)  She also found that Plaintiff's thought processes were coherent, his intellectual functioning was average, and his judgment ranged from fair to poor. (Tr. 389.)  Dr. Arrington found that Plaintiff was able to follow and understand simple instructions, struggled with motivation, and experienced difficulty maintaining attention and concentration, all which may significantly interfere with Plaintiff's ability to function on a daily basis.  (Tr. 389.)  Dr. Arrington's diagnostic impression was bipolar 2 disorder, neurocognitive disorder, and mild alcohol abuse.  (R. 390.)  Dr. Arrington opined that Plaintiff needs assistance managing funds, and recommended that Plaintiff continue with his current psychiatric treatment. (Tr. 390.)  Dr. Arrington additionally provided that Plaintiff's "prognosis is guarded."  (Tr. 390.)

### 3. Function Report

Plaintiff submitted a self-function report dated April 8, 2014, in support of his DIB claim. (Tr. 190.)  Plaintiff stated that his daily activities consist of waking up around 11:00 A.M. and then watching television for the remainder of the day.  (Tr. 190.)  Plaintiff also stated that he cares for his pets with the assistance of his wife, he wears the same clothes for days, and he has poor personal

5

hygiene. (Tr. 191.) Furthermore, Plaintiff reported that his wife takes care of all household chores, shopping and finances, and that he has no desire to leave his house. (Tr. 192–93.) Plaintiff also self-reported that he was paranoid and suicidal, and that he had difficulty following instructions, "getting along with authority figures," handling stress, and handling change. (Tr. 195–97.)

### 4. Hearing Testimony

At the hearing before ALJ Olarsch on October 22, 2014, Plaintiff testified about his previous employment, daily activities, debilitating conditions, and medication/treatment. (*See* Tr. 32–49.) Although Plaintiff referenced multiple physical ailments that contributed to his request for DIB, his testimony centered on his psychiatric ailments. (Tr. 35–41.)

Vocational Expert Wilson ("Wilson") also testified at the hearing and first stated that Plaintiff would be unable to perform any of his "past relevant work." (Tr. 46–47.) However, Wilson also testified that there existed representative jobs in the national economy that a person such as Plaintiff could perform. (Tr. 47.) Such jobs included meat clerk, counter supply worker, and machine feeder. (Tr. 47–48.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the

Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*,

354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if

the factual record is adequately developed, "the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at

\*2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)

(internal quotation marks omitted)).  "The ALJ's decision may not be set aside merely because [a

reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F.

App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give

substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126,

128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which

evidence he accepts and which he rejects, and the reasons for that determination."  *Cruz*, 244 F.

App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant,

probative and available evidence was not explicitly weighed in arriving at a decision on the

plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.

1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal

quotation marks omitted).  Indeed, a decision to "award benefits should be made only when the

administrative record of the case has been fully developed and when substantial evidence on the

record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v.*

*Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . "  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is

not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained

basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ

considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§

404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then

requires the ALJ to determine whether the claimant has the RFC to perform the requirements of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able

to perform his or her past relevant work, he or she will not be found disabled under the Act. 20

C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable

to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work,

considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden

of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable

of performing an alternative SGA present in the national economy.  20 C.F.R. §§ 404.1520(g)(1)

(citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d

Cir. 1987).   At this point in the analysis, the Social Security Administration ("SSA") is

"responsible for providing evidence that demonstrates that other work exists in significant numbers

in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational

factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other

SGA, he or she is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    DISCUSSION

ALJ Olarsch applied the Five-Step Disability Test to the facts comprising Plaintiff's

application for DIB and determined that Plaintiff was not disabled under the relevant portions of

the Act.  (*See* Tr. 18–25.)  Specifically, ALJ Olarsch determined that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" and that "there are jobs that

exist in significant numbers in the national economy that [Plaintiff] can perform."  (Tr. 18, 24

(citations omitted).) These factual findings are supported by substantial credible evidence in the

record.  Therefore, this Court affirms ALJ Olarsch's denial of DIB.  The following is an outline of

ALJ Olarsch's five-step analysis:

At step one of the disability analysis, ALJ Olarsch properly found that Plaintiff had not

engaged in SGA since January 10, 2014, the alleged onset date of Plaintiff's disability.  (Tr. 18);

*see* 20 C.F.R. §§ 404.1571 *et seq*.  ALJ Olarsch accordingly proceeded to step two to determine

what, if any, severe impairments Plaintiff suffered.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step two, ALJ Olarsch properly considered the entire medical record in finding that

Plaintiff suffered from the following severe impairments: "affective disorder, bipolar disorder."

(Tr. 18); *see* 20 C.F.R. § 404.1520(c).  ALJ Olarsch found that these severe impairments

"significantly limit [Plaintiff's] mental and physical abilities to do one or more basic work

activities.  In addition, [Plaintiff's] impairments have lasted at a 'severe' level for a continuous

period of more than 12 months."  (Tr. 18.)  ALJ Olarsch's findings of severe impairments are

supported by substantial evidence in the record.  Furthermore, ALJ Olarsch correctly determined

that Plaintiff's "history of papillary carcinoma thyroid status" has been in remission, and there is

no evidence that this impairment "has the limiting effects on [Plaintiff's] ability to perform basic

work activities."  (Tr. 18)  Therefore, this impairment is not "severe."  (Tr. 18); *see* C.F.R. §

404.1520(c).  Once ALJ Olarsch determined which of Plaintiff's impairments qualified as

"severe," ALJ Olarsch considered, under step three, whether Plaintiff's severe impairments equal

or exceed those in the Listing of Impairments in the Act. *See* C.F.R. § 404.1520(a)(4)(iii).

At step three, ALJ Olarsch properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 18.)  Specifically, ALJ Olarsch found that Plaintiff's mental impairments did not meet or exceed the severity requirements set forth in listing 12.04.  (Tr. 19.)  ALJ Olarsch was correct that the Paragraph B requirements were not satisfied because Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration. (Tr. 19); *see* 20 C.F.R. §§ 404.520(d), 404.1525, 404.1526.  In reaching this conclusion, ALJ Olarsch properly found that Plaintiff only has mild restriction in his activities of daily living.  (Tr. 19.)  In addition, ALJ Olarsch cited to evidence and stated that Plaintiff "has no difficulty taking care of his own personal needs, hygiene and grooming or engaging in activities of daily living in an appropriate and effective manner, on an independent and sustained basis."  (Tr. 19.)  Plaintiff vacuums his house as well as performs other household tasks, and drives independently several times each week.  (Tr. 19.)  ALJ Olarsch also found that Plaintiff only has mild difficulties in social functioning, and cited Plaintiff's testimony and the record that Plaintiff "gets along with others," socializes, and visits his sister regularly. (Tr. 19.)  Plaintiff also has no issue with authority and testified "that he gets along with people in general and he had some friends."  (Tr. 19.)  Next, ALJ Olarsch found that Plaintiff only has moderate difficulties with regard to concentration, persistence or pace.  (Tr. 19.)  Lastly, ALJ Olarsch properly found that the record evidence reflects that Plaintiff has not experienced any episodes of decompensation lasting for an extended duration. (Tr. 19.)  ALJ Olarsch also found that the evidence failed to establish the presence of the Paragraph C criteria.  (Tr. 19.)  Therefore, ALJ Olarsch properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Accordingly, Plaintiff was not disabled under step three analysis, leading ALJ Olarsch to step four to determine whether Plaintiff can perform any of his past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ie), 404.1520(e).

Before undergoing the analysis in step four, ALJ Olarsch determined Plaintiff's RFC.  (Tr. 20–24); *see* 20 C.F.R. §§ 404.1520(e), 404.1545.  ALJ Olarsch properly concluded that Plaintiff has the RFC to perform a full range of work.  (Tr. 20.)  After extensive review of the record, ALJ Olarsch found, specifically, that, "[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine repetitive unskilled tasks; off task up to 10% of the workday."  (Tr. 20.)  In making this determination, ALJ Olarsch considered both objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p.  (Tr. 20.)  He also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  (Tr. 20.)  In support of his finding, ALJ Olarsch cited extensively to Plaintiff's testimony, the treatment and evaluative records of Dr. Lizardo, Dr. Siegel, Dr. Tramontano, Dr. Arrington, and the State Agency psychological consultants.  (*See* Tr. 20–24.)  In light of the substantial evidence reviewed by ALJ Olarsch, this Court finds that ALJ Olarsch properly determined Plaintiff's RFC.

After determining Plaintiff's RFC, at step four ALJ Olarsch properly found that Plaintiff cannot perform his past relevant work under 20 C.F.R. 404.1565.  (Tr. 24.)  ALJ Olarsch cited to the vocational expert's testimony that Plaintiff cannot perform the work of a highway worker or detective.  (Tr. 24.)  ALJ Olarsch noted that Plaintiff's past relevant work was performed at the medium and light levels and was of semi-skilled nature, and thus, based on his RFC, Plaintiff is unable to perform such work.  (Tr. 24.)  Because ALJ Olarsch determined that Plaintiff cannot

perform any of his past relevant work, ALJ Olarsch continued to step five to determine whether there exists work in the national economy Plaintiff could perform. *See* C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 404.1520(g)(1).

At step five, ALJ Olarsch properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (Tr. 24); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1569, 404.1569a. ALJ Olarsch considered Plaintiff's age, education, work experience and RFC, as well as the vocational expert's testimony. (Tr. 24–25.) The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a meat clerk, counter supply worker, and machine feeder, which exist in the aggregate of thousands of jobs nationally. (Tr. 25.) Thus, ALJ Olarsch's factual findings that Plaintiff is capable of performing work that exists in significant numbers in the national economy are supported by substantial credible evidence. Accordingly, ALJ Olarsch was correct in determining that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 25); *see* 20 C.F.R. 404.1520(a)(4)(v).

## CONCLUSION

Because this Court finds that ALJ Olarsch's factual findings were supported by substantial credible evidence in the record and that ALJ Olarsch's legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*

**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:      Parties

14